**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. NATALIE N. PAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-17- 404-F |
| | ) | |
| 1. RIVIERA TANNING SPA, LLC, and | ) | |
| 2. CHEEK'S RIVIERA TANNING SPA, INC. | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | ATTORNEY LIEN CLAIMED |

**COMPLAINT**

**COMES NOW** the Plaintiff, Natalie N. Payton, and for her Complaint against the Defendants alleges and states as follows:

**PARTIES**

1. The Plaintiff is Natalie N. Payton, an adult female resident of McClain County, Oklahoma.

2. The Defendants are:

(a) Riviera Tanning Spa, LLC, an entity doing business in and around Oklahoma County, Oklahoma; and

(b) Cheek's Riviera Tanning Spa, Inc., an entity doing business in and around Oklahoma County, Oklahoma.

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with Defendants and is based on the following claims: (a) gender discrimination, sexual harassment, and the creation of a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended; and (b) wrongful discharge in violation of state law which prohibits terminating an employee for engaging in whistle-blowing activities.

1

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.

5. Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing with the Equal Employment Opportunity Commission ("EEOC") on or about August 21, 2015. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated on or about January 11, 2017, which Plaintiff received by mail thereafter, and has timely filed this action within ninety (90) days of receipt of her notice of right to sue.

6. Defendants are located in Oklahoma County and all acts complained of occurred in or around Oklahoma County. Oklahoma County is located within the Western District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7. Plaintiff was hired with Defendants as an Area Manager in or around December 2014.

8. Defendants own and operate tanning salons throughout Oklahoma. As an Area Manager, Plaintiff supervised three locations in Norman, Del City and Oklahoma City. Plaintiff reported to Owner Jimmy Cheek.

9. Throughout her employment, Plaintiff and other female employees were subjected to offensive sexual and gender-related comments from Cheek, often via text message. Plaintiff and other Area Managers participated in group text messaging for work. In group messages with other employees, Cheek offered to hire a prostitute and buy sex toys for an employee's son who was graduating from high school. And, Cheek texted pictures of women wearing lingerie to his employees via group texts.

10. In addition, Cheek made comments via group text such as "that's a woman

driver for you" when an Area Manager notified him she was late to her store due to icy road conditions.

11.     On another occasion, when Plaintiff told Cheek she had a female employee interested in a maintenance position, Cheek told Plaintiff he would get the female employee "a cute pink tool belt."

12.     However, rather than train the female employee, Cheek opted to train a male employee to perform maintenance duties. The male employee was a sales associate who reported to Plaintiff. Jokingly, Plaintiff asked Cheek if she would receive a finders fee for giving up her best sales associate. In response, Cheek asked Plaintiff in a sexually suggestive manner, "if he doesn't work out what do I get?" Plaintiff was highly offended by Cheek's suggestion.

13.     Plaintiff was also highly offended by Cheek's failure to notify his employees, including female employees under the age of 18, that a maintenance man who frequently worked in store locations had been arrested in or around April 2015 for sexual abuse of a child and manufacturing child pornography. Immediately following the arrest, Plaintiff told Cheek he needed to investigate his stores, including reviewing video surveillance, to determine whether the maintenance worker had engaged in such behavior at Defendants' locations. Plaintiff further insisted that Cheek notify the parents of underage employees about the arrest. However, Cheek ignored Plaintiff's requests.

14.     Moreover, Cheek showed preferential treatment to younger, single, attractive female employees. Cheek showed particular favoritism to young women who agreed to go out drinking with him in the evenings, including women who were not old enough to legally drink. Upon information and belief, Cheek had "employee meetings" at this home where he offered 19 and 20 year old female employees alcohol. He further told them they could stay

overnight at his home after the meetings.

15. Cheek treated married female employees and female employees who refused to engage socially with him significantly less favorably. If Cheek was upset with such an employee, he referred to her as a "bitch" in front of other employees. Cheek further harassed Plaintiff to "get a babysitter" for her 2-year-old daughter, although Plaintiff had adequate childcare during her working hours.

16. Plaintiff objected to Cheek's offensive conduct and refused to engage in sexual banter and refused to go to his home. Following Plaintiff's refusals, Cheek began counseling Plaintiff for store performance and other issues for which others were not disciplined. And, in an email sent Sunday, May 10, 2015 (Mother's Day), Cheek again chastised Plaintiff for not having a babysitter, not being in her stores, and thus not being "loyal" to Defendants. However, Plaintiff worked in her stores as much as other Area Managers, despite having a child.

17. Shortly thereafter, Plaintiff was issued a write-up by Cheek, supposedly for poor sales and not "driving the brand." However, Plaintiff's stores were performing at an acceptable level at that time. And, any decrease in sales from the previous year could be attributed to factors outside of Plaintiff's control, such as the economy.

18. Due to Cheek's continued harassment and discipline, Plaintiff was forced to resign from her employment on or about May 22, 2015.

19. As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries as described below.

## COUNT I: Title VII (Gender)

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

20. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination, harassment, and creation of a sexually hostile work environment.

21. Plaintiff is entitled to relief under Title VII because she is female, was qualified for her job, was terminated, and her position was not eliminated following her termination.

22. Moreover, Plaintiff is entitled to relief under Title VII for gender-based harassment and sexual harassment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of her employment, and the harassment was gender based or stemmed from gender based animus.

23. Plaintiff is further entitled to relief under Title VII for retaliation because she engaged in protected activity, she suffered adverse actions subsequent to the protected activity; and a causal link exists (based on *inter alia* the timing of the events) between the protected activity and adverse actions.

24. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

25. Because the actions of Defendant were willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II - *BURK* TORT

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

26. The acts above-described constitute a violation of Oklahoma's public policy[1]

---

[1] Such legislative intent is embodied in Oklahoma state law, including but not limited to the Oklahoma Law on Obscenity and Child Pornography, 21 O.S. §1021 *et seq*.

which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

27.  Plaintiff has suffered injuries and is entitled to recovery all damages or other relief allowed by state law, including but not limited to, lost wages (past and future), emotional distress damages, punitive damages, and attorney's fees and costs.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in favor of the Plaintiff and against Defendant and award compensatory damages, punitive damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

Respectfully submitted this 7th day of April, 2017.

s/ Jana B. Leonard
**JANA B. LEONARD, OBA # 17844
LAUREN W. JOHNSTON, OBA # 22341
SHANNON C. HAUPT, OBA #18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. Walker
Oklahoma City, Oklahoma 73139
(405) 239-3800 (telephone)
(405) 239-3801 (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net**

**ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED**